LOLLEY, J.,
dissenting.
hi respectfully dissent from the ruling of the majority in this case. I am of the opinion that the presented evidence clearly shows that the incident which resulted in the death of Mrs. Margaret Caldwell was clearly beyond workers’ compensation coverage and was clearly beyond what would be considered within the course and scope of employment.
The record reveals that the decedent Mrs. Margaret Caldwell was an employee of defendant Shady Lake Nursing Home, Lake Providence, Louisiana and was working within the course and scope of her employment when she was physically attacked by a resident of the nursing home, one William DiMaggio. As the result of this unprovoked attack Mrs. Caldwell suffered a fatal heart attack and passed away almost immediately.
I am of the opinion that this was not an unforeseen incident and that the heirs of the decedent are not limited to recovery only under the workers’ compensation statutes.
The record clearly reveals that William DiMaggio was a resident of Shady Lake Nursing Home on the date of the fatal incident only because he had been removed from one or more like facilities because of his propensities for violence. This alone should have placed the owners/managers/staff of Shady Lake Nursing Home on notice that DiMaggio was a problematic patient with a history of violence. The evidence and record contains no such warnings. Additionally, there is no evidence in the record that shows the nursing home took any measures to | ¡¡place the employees and staff on notice as to what DiMaggio’s tendencies and documented record were.
Shady Lake takes the position that it is not unusual at all for patients to be wandering around the halls of the nursing home at all hours of the day and night. This is unsupportable because obviously not every patient has the history of DiMaggio. The record clearly shows that he had been removed from at lest one other facility because of his aggressive and combative history. The owners/management of Shady Lake were fully aware of DiMaggio’s history but agreed to take him as a patient anyway.
■ On the date of the fatal event the decedent was working her normal shift and was in the process of mopping the floor in the area of the lobby. An employee of Shady Lake, Mrs. Spencer, was the only witness to the incident which led to the death of Mrs. Caldwell. The testimony revealed that she was working at her assigned station in the lobby area. She heard a verbal exchange between DiMaggio and the decedent. The next thing Spencer observed was that the two were involved in a physical altercation and were actually fighting. Staff obviously intervened, DiMaggio was returned to his room or wherever else he was allowed to roam at that hour of the day. Mrs. Caldwell remained in the lobby area having suffered a fatal heart attack as the direct result of the incident. A cursory review of the statutes and the particular and peculiar facts and present evidence of this case clearly shows that this event was not within the job description or employment expectations for any employee to have to defend themselves |sfrom the attack of a clearly deranged person with a well documented history of such conduct.
Immediately after the attack the nursing home staff removed DiMaggio from the immediate area. Mrs. Caldwell remained *572 in the lobby area where she passed away as the result of this event.
As previously stated, DiMaggio came to Shady Lake after having been removed from at least one other facility because of lack of control and violent outbursts. The administration of Shady Lake was fully aware of this history yet elected to accept him as a resident and place him in the general population of the home. The record clearly outlines his activities from the date of admission until the fatal incident occurred.
The record also shows DiMaggio’s history with the psychiatrist Dr. Calvin Walker. DiMaggio was diagnosed as having impulse control disorder, dementia from closed head injury, psychotic disorder associated with closed head injury and a history of chemical dependency and alcoholism. The management of Shady Lake made the decision to accept him as a patient and place him in the general population even in view of these documented reports.
In no manner could the attack of DiMaggio on Mrs. Caldwell be considered within the course and scope of her employment with the nursing home. DiMaggio’s consistent tendencies were well documented and known to the ownership of the nursing home prior to his admission. The decision was made to admit him and place him in the general population despite this documented record. Tragically, Mrs. Caldwell was unknowing of LDiMaggio’s violent tendencies, was attacked, and paid with her life. When reviewing this evidence I am of the opinion that Mrs. Caldwell’s family and heirs should not be limited to recovery exclusively in worker’s compensation. Accordingly, I respectfully dissent.